IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANAEL STRICKLAND, Plaintiff,
v.
UPPER CHICHESTER TOWNSHIP; DREW LEWIS; and BILL GAVIN, Defendants.

# COMPLAINT

## 1. Jurisdiction and Venue

1. This is a civil action for deprivation of constitutional rights pursuant to 42 U.S.C. § 1983. The claims arise under the Constitution and laws of the United States, including the First, Fourth, and Fourteenth Amendments. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (jurisdiction over civil rights actions).

2. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. All Defendants reside in, and the acts complained of occurred in, Upper Chichester Township, Pennsylvania, which lies within this District.

## 2. Parties

1. **Plaintiff Nathanael Strickland** is an adult individual who, at all relevant times, was the owner of real property located at 1826 Cherry Street, Upper Chichester Township, Pennsylvania. Plaintiff also owns a nearby property at 1821 Plum Street in the same township. Plaintiff is a resident of Pennsylvania and a citizen of the United States. Plaintiff's personal residence is at 1661 Cherry Street Upper Chichester.

2. **Defendant Upper Chichester Township** ("Township") is a municipal corporation (Township of the Second Class) organized under the laws of Pennsylvania. The Township is a "person" within the meaning of 42 U.S.C. § 1983 and is sued directly and on the basis of the doctrines of municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as further described below.

3. **Defendant Drew Lewis** is, upon information and belief, a code enforcement official employed by the Township. Specifically, at all relevant times Lewis served as a Uniform Construction Code ("UCC") Inspector in the Township's License & Inspection Department. He is sued in his individual and official capacities. At all times described in this Complaint, Defendant Lewis was acting under color of state law and within the scope of his employment with the Township.

4. **Defendant Bill Gavin** is the Director of License & Inspection for the Township, overseeing building permitting and code enforcement. At all relevant times, Defendant Gavin was a final decision-maker

for the Township's permitting and inspection matters. He is sued in his individual and official capacities. At all times described herein, Defendant Gavin was acting under color of state law and within the scope of his official duties as the Township's License & Inspection Director.

5. At all relevant times, Defendants Lewis and Gavin were employees, agents, and/or officials of Defendant Upper Chichester Township, acting in the course of their employment and under color of the statutes, ordinances, regulations, customs, and usages of the Township and the Commonwealth of Pennsylvania.

## 3. Statement of Facts

1. **Background:** Plaintiff Strickland owns the residential property at **1826 Cherry Street, Upper Chichester Township**, which he was in the process of renovating or improving in late 2025. Plaintiff also has an interest in another property in Upper Chichester located on **Plum Street (address 1821 Plum Street)**. Plaintiff recently sold a property at **3804 Greenwood Avenue -** The house passed a valid U&O inspection before the sale of the property. Over a month after the sale completed, Township officials demanded retroactive permits on this property (November 19). Plaintiff questioned these demands, and stated that they could have been easily addressed while the property was still in his possession.

2. **November 20, 2025 – Unlawful Entry by Inspector:** On or about November 20, 2025, (less than 24 hours after initial retroactive permit demand on sold property) Defendant **Drew Lewis** arrived at 1826 Cherry Street to conduct some form of inspection or code enforcement action. Lewis stated to plaintiff *"you're in big trouble now"*. Without Plaintiff's consent and without a warrant, Lewis **forcefully entered** the premises at 1826 Cherry Street by pushing open a door obstructed by a step ladder. Plaintiff stood directly behind Lewis while this happened. Lewis shouted twice, *"Move the ladder,"* while physically forcing his way in through the doorway, subsequently pushing the door into the ladder and moving it. Neither of the painters inside moved the ladder before Lewis forced entry. Plaintiff had not invited Lewis inside, and there were no exigent circumstances or any other legal justification for this unannounced, forcible entry. 2 painters inside directly witnessed the sequence of events.

3. Defendant Lewis's entry into Plaintiff's property was an **unreasonable search and seizure** in violation of the Fourth Amendment. There was no search warrant, no consent, and no emergency. The U.S. Supreme Court has made clear that even administrative or housing code inspections must either have the occupant's consent or a warrant, and that officials may "authorize entry, but not entry by force," absent such authorization. The **privacy and security of Plaintiff's home** were violated by Lewis's arbitrary invasion, which is precisely what the Fourth Amendment is designed to prevent. Plaintiff was alarmed and intimidated by Lewis's actions and remarks.

4. **November 21, 2025 – Permit Application Denied on Pretext:** The very next day, Plaintiff confronted Lewis on the forced entry. One of the painters (who was wearing a respirator while painting) stood unmasked and witnessed Lewis's denial and fabrication of events. Later that same day, plaintiff went to Upper Chichester township building to apply for permits for the property at 1826 Cherry Street. Plaintiff was ultimately informed directly by Lewis that no permits would be approved until the Greenwood property was "resolved". In other words, the Township tied approval of the Cherry Street permits to matters concerning a completely different property that was sold approximately 4 weeks

prior. Plaintiff had not been provided any prior notice that issues at another property would block his permit, nor is there any lawful ordinance or rule that allows the Township to withhold a permit for one property on the basis of separate, unrelated property code issues. This rationale was **arbitrary and without justification**. Plaintiff understood this as a retaliatory or punitive measure, given that he had asserted his rights earlier this same day regarding the forced entry incident.

5. Plaintiff immediately sought clarification on the permit denial. He pointed out that any code issues at the Greenwood property were being addressed separately and should not impact the permit for 1826 Cherry Street. Township officials, however, refused to reconsider, effectively conditioning Plaintiff's ability to obtain the Cherry Street permit on his capitulation to the Township's demands regarding the other property. This unexpected denial stalled Plaintiff's renovation project and put him at risk of financial loss. The lack of a valid reason or fair process for this denial is a central issue in this case, as it deprived Plaintiff of his property rights without due process.

6. **November 24, 2025 – Threatening Call from Bill Gavin:** On or about November 24, 2025, Defendant **Bill Gavin**, the Township's License & Inspection Director, personally **telephoned Plaintiff**. In this conversation, Gavin's tone was hostile. He explicitly **threatened Plaintiff with punitive action**, stating in substance that the Township would impose **fines** and issue **stop work orders** against Plaintiff's properties. Gavin indicated that these measures would be forthcoming if Plaintiff did not "comply". Plaintiff immediately questioned Gavin and informed him of an attempt to pull permits 3 days prior but was rejected by Lewis. Gavin's threats appeared to be an attempt to intimidate Plaintiff into submission regarding the sold Greenwood property. Gavin stated verbatim "I know local judge David Griffin real well and we could take this to him". Plaintiff understood Gavin's message clearly: any resistance or further complaints by Plaintiff would be met with heavy-handed enforcement actions from the Township.

7. **December 8, 2025 – Plaintiff's Demand Letter:** In response to the escalating harassment, Plaintiff decided to formally assert his rights. On December 8, 2025, Plaintiff sent a **written demand letter** via certified mail to Upper Chichester Township officials. This letter detailed the wrongful conduct that had occurred up to that point. Specifically, Plaintiff's letter recounted Defendant Lewis's unlawful entry on November 20 and the improper denial of the Cherry Street permit on November 21, as well as Gavin's subsequent threats. Plaintiff asserted that these actions were unacceptable abuses of authority, violating his rights. The letter demanded that the Township **cease its retaliatory and unlawful actions**, approve the permit (or at least provide a legitimate explanation grounded in code if there was a real issue), and refrain from issuing any unwarranted fines or stop work orders. Plaintiff set a **deadline of 10 business days** for the Township to respond and resolve these issues, indicating that if the matter was not resolved, he would consider pursuing legal action to protect his rights. This letter constituted Plaintiff's **protected petition to the government for redress of grievances**, an activity squarely protected by the First Amendment.

8. Plaintiff mailed the demand letter on December 8, 2025, via certified mail to ensure proof of delivery. The letter was addressed to the Township's manager. Plaintiff's goal was to provide the Township an opportunity to correct its officials' conduct without litigation. The letter's tone was firm but professional, urging the Township to take the matters seriously and to respond by the stated deadline.

9. **December 12, 2025 – Retaliatory Stop Work Orders Issued:** On December 12, 2025, Plaintiff's certified letter was delivered to and received by the Township. According to the return receipt, the delivery was signed for by an employee named **Dace Bell** (a property maintenance inspector in the Township's L&I Department), confirming receipt on that date. **That same day – December 12, 2025 – and immediately after the Township had notice of Plaintiff's formal complaint – the Township, through Defendant Bill Gavin, issued Stop Work Orders on *two* of Plaintiff's properties.** Specifically, Defendant Gavin personally placed **Stop Work Orders** ("SWOs") at **1826 Cherry Street** and at **1821 Plum Street** on December 12 at 3:35 PM & 3:41PM.

10. The Stop Work Order for 1826 Cherry Street ordered all construction or renovation activity at that property to cease immediately. This order was issued despite the fact that any work requiring a permit was what Plaintiff had sought a permit for weeks prior, and the only reason a permit was not in place was the Township's improper denial. In essence, the Township first refused to issue the permit without lawful basis, then swiftly issued a Stop Work Order to bar Plaintiff from working – a classic Catch-22 imposed on Plaintiff in retaliation for challenging the Township. The SWO cited vaguely that work must stop due to "permit issues," but given the context, it was not a genuine enforcement of any legitimate code violation – it was punishment.

11. Even more egregiously, the Township (via Gavin) also issued a Stop Work Order for **1821 Plum Street**, another property owned by Plaintiff. There was no ongoing construction there that would warrant a Stop Work Order. Upon information and belief, no township official had observed any code violation or unpermitted work in progress at the Plum Street property. Plaintiff video recorded the entire interaction to document everything. **Defendant Gavin contemporaneously admitted on video that he did not know whether any work was actually occurring at 1821 Plum Street**; he candidly stated that he was using the Stop Work Order as a tool to "gain access" to inspect that property. In other words, the SWO was not issued because of any specific non-compliance by Plaintiff at the Plum location, but rather as a **pretext to enter and search** the property for potential issues, or simply to harass Plaintiff further. This admission by Gavin demonstrates the improper purpose behind the enforcement action & a direct contradiction to the stop work order which cites unpermitted work. A valid "Transfer of title" inspection was completed at this property (10/20/2025) by the township and the required $130.50 fee was paid. No violations were noted, and the transaction closed thereafter.

12. The timing and circumstances of these Stop Work Orders make their retaliatory intent unmistakable. They were both issued on the very day the Township received Plaintiff's demand letter, and they were directed at crippling Plaintiff's use of **both** of his properties. Prior to Plaintiff's letter, the 1821 Plum Street property was not under any active enforcement action; the sudden issuance of an SWO there, without evidence of wrongdoing, shows a retaliatory motive. The Township's message in doing so was clear: if a resident dares to complain about Township officials or assert their rights, the Township will retaliate by "cracking down" on that person's properties, whether justified or not.

13. The SWOs caused immediate injury to Plaintiff. At 1826 Cherry Street, Plaintiff was forced to halt all work, leaving his project in limbo and exposing him to potential financial penalties or losses (such as contractor delays and material costs). At 1821 Plum Street, even though no unpermitted work was occurring, the posting of an official Stop Work Order stigmatized the property, alarmed neighbors, and granted Township officials the leverage to enter the property. Plaintiff was put in the position of having to arrange for inspections or hearings to get the SWO lifted, all of which require time and expense. The SWOs were posted publicly, harming Plaintiff's reputation as a property owner by

    implying non-compliance, when in fact the orders were baseless, as confirmed by Gavin's contemporaneous video statements made immediately after posting the stop work orders.

14. **Lack of Response by Deadline (December 19, 2025):** In his certified letter, Plaintiff had given the Township until **December 19, 2025** to substantively respond and address his grievances (the unlawful entry, the permit denial, the threats, etc.) before he would escalate the matter. That deadline passed **without any written response or acknowledgement from the Township**. The Township's officials, including Defendants Gavin and Lewis, **failed to respond** to Plaintiff's demand letter by December 19. They provided no explanation or justification for the November 21 permit denial, no explanation for the sudden December 12 stop work orders, and no assurance that Plaintiff's rights would be respected going forward.

15. As of the December 19 deadline (and indeed to date), the Township has **not rescinded** the Stop Work Orders on 1826 Cherry or 1821 Plum, nor has it issued the requested deck permit for 1826 Cherry Street. The Township has not identified any code provision or legitimate reason that would tie the Cherry Street permit to the Greenwood property issues – confirming Plaintiff's belief that this was an improper and arbitrary action. In short, the Township completely ignored Plaintiff's attempt at an amicable resolution, essentially **ratifying** the misconduct of its officials by leaving the retaliatory measures in place and failing to correct course.

16. Plaintiff has exhausted all reasonable options short of litigation to resolve this dispute. The pattern of conduct by Defendants – an unlawful entry, an unfounded permit denial, explicit threats, and retaliatory enforcement actions – has left Plaintiff with no choice but to seek relief from this Court. The facts demonstrate a **clear timeline of retaliation and constitutional violations** targeted at Plaintiff after he stood up for his rights. Defendants' actions have violated Plaintiff's Fourth Amendment right to be secure in his home, his First Amendment right to petition and speak out without retaliation, and his Fourteenth Amendment right to due process in the use of his property and in fair access to permitting processes. These violations were conducted under color of state law by Township officials, and the Township's failure to supervise or curb this behavior shows a policy or custom of allowing such violations.

## 4. Claims for Relief

*(Each Count realleges and incorporates by reference all paragraphs above as though fully set forth herein.)*

### Count I – Fourth Amendment Violation (Unlawful Entry by Drew Lewis) – 42 U.S.C. § 1983

1. Plaintiff incorporates all preceding paragraphs by reference. **Defendant Drew Lewis**, acting under color of state law as a Township code official, violated Plaintiff's rights under the **Fourth Amendment to the U.S. Constitution**, as applied to state actors by the Fourteenth Amendment.

2. On November 20, 2025, Defendant Lewis intruded into Plaintiff's home at 1826 Cherry Street without a warrant, without consent, and without any lawful justification. Plaintiff had a reasonable expectation of privacy in his property. Defendant's act of pushing open the door obstructed by a step ladder and entering against Plaintiff's wishes was an **unreasonable search** of Plaintiff's dwelling and an

    **unreasonable seizure** of Plaintiff's property (in that it constituted a physical invasion & photos were taken of interior).

3. No exigent circumstances existed that could justify a warrantless forced entry. Plaintiff was not in distress, no emergency was unfolding, and the purpose of Lewis's visit was purportedly a routine code matter – which does not permit bypassing the Fourth Amendment's warrant requirement.

   Indeed, the U.S. Supreme Court has established that a resident has the **right to deny entry to a building inspector without a warrant**, and an inspector **cannot lawfully insist on entry by force** absent a warrant or emergency. By ignoring these clearly established constitutional limits, Defendant Lewis engaged in a knowing and willful violation of Plaintiff's rights.

4. Defendant Lewis's statements ("you're in big trouble now") and conduct in forcing entry show that his invasion was intentional and done under color of his authority as a Township official. This unlawful entry deprived Plaintiff of his Fourth Amendment right **"to be secure in his house … against unreasonable searches and seizures,"** a right guaranteed to him as a U.S. citizen.

5. As a direct result of Defendant's actions, Plaintiff suffered damages, including emotional distress, fear, and the invasion of his personal security and privacy. The conduct was willful, wanton, and undertaken with reckless disregard for Plaintiff's constitutional rights, justifying an award of punitive damages against Defendant Lewis in his individual capacity.

6. **Wherefore**, Plaintiff seeks judgment against Defendant Lewis for violating the Fourth Amendment, including compensatory damages for emotional and other harms, and punitive damages, as well as the declaratory and injunctive relief described below, and any other relief the Court deems just.

## Count II – First Amendment Retaliation (Retaliatory Enforcement Actions) – 42 U.S.C. § 1983

1. Plaintiff incorporates all preceding paragraphs by reference. Defendants' actions described above were taken in retaliation for Plaintiff's exercise of First Amendment rights, in violation of the First Amendment to the U.S. Constitution (applied to local government officials through the Fourteenth Amendment's incorporation doctrine).

2. **Protected Activity:** Plaintiff engaged in constitutionally protected activity when he voiced objections to Defendants' conduct and when he sent the **December 8, 2025 demand letter** petitioning the Township to address grievances. The First Amendment protects the right of individuals to complain to government officials and to petition for redress of grievances without fear of punishment. Indeed, government officials are **prohibited from retaliating against individuals for exercising their rights to free speech and to petition the government**.

3. **Adverse Action:** Defendants, particularly **Defendant Bill Gavin**, took adverse actions against Plaintiff that would deter a person of ordinary firmness from continuing to speak out. Specifically, on December 12, 2025 – same day after receiving Plaintiff's certified letter – Gavin issued **Stop Work Orders halting construction** at Plaintiff's 1826 Cherry Street property and even on Plaintiff's 1821 Plum Street property. Additionally, prior to the letter, Gavin had threatened fines and SWOs in his

November 24 phone call, which foreshadowed the retaliation to come. These enforcement actions and threats are "adverse actions" because they imposed significant burdens and penalties on Plaintiff (work stoppage, potential fines, legal violations on record) and were capable of chilling Plaintiff's exercise of his rights.

4. **Causal Connection:** The chronology and Gavin's own admissions establish a causal link between Plaintiff's protected activity and the adverse actions. Plaintiff's formal complaint letter was received on December 12, and *within hours*, Defendants responded not with dialogue or redress, but with punitive orders against Plaintiff's properties. The fact that an SWO was issued for 1821 Plum Street – which even Defendant Gavin conceded he had no evidence of active work on – underscores that the motivation was not actual code enforcement but retaliation. Gavin's statement that he was using the SWO as leverage to "gain access" to 1821 Plum demonstrates a retaliatory and investigatory motive, not a bona fide response to any violation. The timing (immediate) and scope (affecting all Plaintiff's properties) of the Township's actions make it clear that **but for** Plaintiff's letter and complaints, these harsh measures would not have been taken.

5. Defendants' retaliatory conduct violated Plaintiff's First Amendment rights. Citizens have the right to criticize government officials, to appeal permit decisions, and to demand accountability without being subjected to punishment for doing so. The **First Amendment's protections** would be hollow if a township could, with impunity, slap baseless stop-work orders and fines on a resident solely because he asserted his rights. Such retaliation by officials acting under color of law is exactly what 42 U.S.C. § 1983 is designed to remedy.

6. As a direct result of Defendants' retaliatory actions, Plaintiff has suffered damages including loss of use of his property, delay costs, emotional distress, and chilling of his constitutional right to petition. Defendants' actions were taken **willfully and maliciously** to silence or punish Plaintiff, warranting an award of punitive damages against the individual Defendants (to the extent allowed by law). Plaintiff also seeks declaratory and injunctive relief to ensure that the retaliatory orders are lifted and no further retaliation occurs.

7. **Wherefore**, Plaintiff prays for judgment against the responsible Defendants (including Gavin) for violating his First Amendment rights, and requests all appropriate relief as set forth below.

## Count III – Fourteenth Amendment Due Process Violation (Denial of Permits and Arbitrary Enforcement) – 42 U.S.C. § 1983

1. Plaintiff incorporates all preceding paragraphs by reference. Defendants have deprived Plaintiff of his property interests and liberty interests without due process of law, in contravention of the **Fourteenth Amendment's Due Process Clause**, which provides that no State shall **"deprive any person of life, liberty, or property, without due process of law."**

2. **Property Interests at Stake:** Plaintiff has a protected property interest in the use and enjoyment of his real property and in pursuing lawful renovations thereon. Pennsylvania law and local ordinances create an entitlement for property owners to receive building permits when they meet the established criteria. By November 21, 2025, Plaintiff had a legitimate expectation in the issuance of a building permit for 1826 Cherry Street, however the permits were conditioned on an unrelated & sold property.

The Stop Work Orders also impinged on Plaintiff's property interest in continuing lawful work and on his **liberty interest** to be free from arbitrary government interference.

3. **Arbitrary Denial of Permit:** Defendants, acting under color of law, **withheld and denied the 1826 Cherry Street building permit without any substantive justification or fair procedure**. The only reason given – unresolved issues at an entirely different property – was not a valid or written criterion for denying a permit on another property. Plaintiff was not given notice beforehand that such an unrelated issue would block his permit, nor was he given an opportunity (such as a hearing or meeting) to contest or cure this purported ground for denial. This lack of procedure and irrational basis violated Plaintiff's **procedural due process rights** (by not providing notice or a meaningful opportunity to be heard regarding the permit) and **substantive due process rights** (by exercising government power in an arbitrary, capricious, and retaliatory manner not grounded in any legitimate governmental interest). The denial was intended to penalize Plaintiff, not to enforce any actual code requirement, which "shocks the conscience" in a constitutional sense.

4. **Lack of Process for Enforcement Actions:** Similarly, the Defendants imposed Stop Work Orders and threatened fines **without due process**. Typically, a Stop Work Order might issue upon observed code violations or work without a permit, but here, Plaintiff was in a permitting process and the violations were manufactured. The SWOs were effectively edicts issued at Gavin's whim. No notice was given prior to posting them on December 12, 2025, and they took immediate effect, halting Plaintiff's activities. The Township then ignored Plaintiff's demand for explanation (by failing to respond by Dec. 19) in a **second email attempt**. By doing so, Defendants denied Plaintiff any procedural safeguard — he was not informed of any specific infraction, not given a chance to correct anything, and not afforded a hearing before a neutral party either before his projects were shut down.

5. **Violation of Due Process:** The Fourteenth Amendment prohibits this kind of deprivation of property rights without fair procedures and justification. Defendants' actions – the pretextual permit denial and the retaliatory SWOs – amounted to an abuse of power that deprived Plaintiff of the use of his properties and the benefits of permit approval **without due process of law**. There was no valid public health or safety reason to justify these deprivations; the reasons given were a sham. The real motivation was punishment and retaliation, which is not a legitimate governmental purpose. Thus, Defendants violated both **procedural due process** (by failing to follow required procedures or any procedure at all) and **substantive due process** (by acting in a fundamentally arbitrary and unjustifiable manner toward Plaintiff's property rights).

6. As a direct result of Defendants' due process violations, Plaintiff suffered damages including project delays, loss of income or value, costs associated with stalled construction, and emotional distress from being subjected to arbitrary government action. Plaintiff had to expend time and resources attempting to get basic answers and fairness, only to be ignored on both attempts. The uncertainty and disruption caused by Defendants' actions continue to harm Plaintiff.

7. **Wherefore**, Plaintiff seeks judgment that Defendants' conduct violated the Fourteenth Amendment. Plaintiff requests compensatory damages for the losses caused by the permit denial and stop-work orders, and appropriate equitable relief (such as an injunction lifting the improper orders and compelling a proper permit process), as well as declaratory relief confirming the violation of Plaintiff's constitutional rights.

## Count IV – Monell Claim (Municipal Liability – Policy or Custom of Constitutional Violations) – 42 U.S.C. § 1983

1. Plaintiff incorporates all preceding paragraphs by reference. This Count is pleaded against Defendant **Upper Chichester Township** ("the Township") for its own liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Under *Monell*, a local government is subject to suit under § 1983 when the violation of constitutional rights results from the government's official **policy or custom**.

2. The constitutional violations of Plaintiff's rights (as described in Counts I–III) were directly and proximately caused by the policies, customs, or practices of Upper Chichester Township, and/or by the acts of final policymakers for the Township. In particular:

a.  **Policy or Custom of Retaliation:** The Township, by and through its License & Inspection Department and officials, maintained an unofficial **custom of retaliating** against individuals who challenge or complain about the Township's code enforcement actions. The rapid escalation from Plaintiff's complaint to punitive action on December 12 indicates this was a standard response condoned by the Township's leadership. On information and belief, other property owners who have resisted questionable demands have been similarly threatened or treated harshly, reflecting a pattern.

b.  **Failure to Train and Supervise:** The Township's failure to adequately train or supervise its code enforcement personnel (like Defendants Lewis and Gavin) was a moving force behind the violations. The need for proper training on constitutional limits – such as the **Fourth Amendment's prohibition on warrantless, non-consensual home entries** by inspectors, and the **First Amendment's ban on retaliatory enforcement** – is obvious. Yet the Township's policymakers either provided no such training or were deliberately indifferent to whether their officials followed the law. Defendant Lewis's forcible entry on Nov. 20 demonstrates a lack of training or disregard for the Fourth Amendment, implicating the Township's responsibility for ensuring its officers know they cannot barge into homes without a warrant or permission. Similarly, Gavin's actions demonstrate either a lack of training on First Amendment retaliation or a tacit understanding that such retaliation was acceptable within Township government.

c.  **Decision by Final Policymaker:** Defendant Bill Gavin, as the Director of License & Inspection, had final decision-making authority on matters of code enforcement and permitting for the Township (absent any evidence of higher review). Decisions by Lewis to deny the permits and decisions to issue SWOs by Gavin can therefore be considered the decisions of the Township itself. When a final policymaker takes unconstitutional action, the municipality is liable under § 1983. Here, Gavin's actions on Nov. 24 and Dec. 12, 2025, were taken in his official capacity with the authority delegated to him by the Township to enforce codes and issue permits/stop orders. The Township is thus liable for these actions as if it had explicitly ordered them.

d.  **Ratification by Inaction:** Even if the initial acts were not under an official policy, the Township became aware of the constitutional violations (through Plaintiff's December 8 letter and presumably through internal knowledge of the incidents) and **ratified** them by failing to investigate, discipline, or correct the officials involved. The Township's Board of Commissioners or managing officials received Plaintiff's complaints via email yet allowed the Stop Work Orders to proceed or remain and provided no remedy or response. This silence and inaction in the face of known violations amount to the Township's approval of the conduct. The Township effectively communicated to its employees that such conduct is permissible by not reprimanding Lewis or Gavin, nor rescinding the unlawful orders. This **tacit approval** constitutes a municipal custom or policy of indifference to citizens' constitutional rights.

1. The Township's policies or customs as described were the "moving force" behind the violations of Plaintiff's rights. But for the Township's failure to train and its tacit policy of retaliation, the events would not have unfolded as they did. Furthermore, the Township's endorsement (through Gavin as a policymaker and through non-action by other officials) of the wrongful acts makes the Township directly liable. In sum, **Upper Chichester Township is responsible for the deprivations of Plaintiff's rights because those deprivations were implemented pursuant to the Township's own policy or custom, and not as isolated incidents of rogue employees.**

2. As a result of the Township's unconstitutional policies/customs, Plaintiff suffered all the aforementioned injuries – loss of property use, delay, distress, and the violation of his fundamental rights. The Township, as a governmental entity, is liable to Plaintiff for these injuries. Although municipalities are immune from punitive damages in § 1983 actions, the egregiousness of the Township's conduct should be noted by the Court in fashioning equitable relief and in any award of attorneys' fees or costs (should Plaintiff retain counsel), pursuant to 42 U.S.C. § 1988.

3. **Wherefore**, Plaintiff seeks judgment against Defendant Upper Chichester Township for municipal liability under § 1983. Plaintiff requests an order declaring that the Township's policies or lack thereof caused violations of Plaintiff's constitutional rights, and injunctive relief requiring the Township to cease and desist from such unconstitutional practices, as well as compensation for Plaintiff's damages as allowed by law.

## 5. Damages and Relief Requested

**WHEREFORE,** Plaintiff Nathanael Strickland respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

- **Compensatory Damages:** An award of compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial, to compensate Plaintiff for the violations of his constitutional rights, including but not limited to damages for emotional distress, humiliation, loss of enjoyment of property, financial losses caused by project delays and permit denial, and other pain and suffering.

- **Punitive Damages:** An award of punitive damages against the individual Defendants (Lewis and Gavin) in their personal capacities, in an amount sufficient to punish them for their willful, malicious, or reckless conduct and to deter such conduct in the future. (Plaintiff does not seek punitive damages from the Township, as municipal entities are not subject to punitive damages under § 1983.)

- **Declaratory Judgment:** A declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202, declaring that Defendants' actions, as alleged herein, violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. Such a declaration will make clear that the Defendants' conduct was unconstitutional, vindicating Plaintiff's rights and guiding the Township's future conduct.

- **Injunctive Relief:** A permanent injunction ordering Upper Chichester Township and its officials to (a) rescind or withdraw the Stop Work Orders issued on December 12, 2025, for 1826 Cherry Street and 1821 Plum Street, (b) cease any outstanding enforcement actions or fines threatened or imposed on

Plaintiff in retaliation for his protected conduct, (c) refrain from conditioning Plaintiff's 1826 Cherry Street building permit on unrelated properties, and to process any resubmitted permit application for 1826 Cherry Street in good faith and according to law, and (d) generally prohibit Defendants from engaging in further retaliatory or unconstitutional conduct against Plaintiff. Plaintiff also seeks an injunction requiring the Township to expunge any records of violations issued against Plaintiff that were retaliatory in nature, and to put in place appropriate training or policy revisions to prevent future violations.

- **Attorneys' Fees and Costs:** An award of Plaintiff's costs of suit and, if Plaintiff later secures representation by counsel, reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any other applicable law. (While Plaintiff is presently pro se, he reserves the right to seek statutory attorneys' fees for any counsel who may represent him in this action.)

- **Any Other Relief:** Such other and further relief as the Court deems just, proper, and equitable, including any relief that may be necessary to restore Plaintiff's rights and to remedy the Defendants' wrongdoing.

**Jury Trial Demand:** Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

/s/ Nathanael Strickland
Nathanael Strickland, Pro Se
1661 Cherry Street
Upper Chichester, PA 19061
Email: njstrick35@gmail.com
Phone: 484-661-3168